IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 3:19-CR-507-L |
| v. | |
| SEKHAR RAO | |

### NOTICE OF INEXTRICABLY INTERTWINED OR 404(b) EVIDENCE

The United States, by and through the undersigned, intends to introduce evidence at trial that is inextricably intertwined with the charged conduct. Although the evidence described in this notice is inextricably intertwined and not 404(b) evidence, in an abundance of caution, the United States respectfully submits this Notice to the Court and the defendant[1].

### BACKGROUND

The United States seeks to elicit testimony and present evidence at trial that defendant Sekhar Rao ordered toxicology and genetic testing for a variety of labs during the charged conspiracy, from May 2014 to June 2016. The defendant was the medical director for ADAR Group, LLC, which worked with several labs to submit urine and saliva samples for testing and ultimately to be billed through insurance programs, including the TRICARE program.

---

[1] On October 5, 2015, defense counsel informed the United States that the inextricably intertwined evidence referenced in this notice would be listed on defendant's exhibit list. In addition, all evidence referenced in this notice was provided to the United States by the defendant on or about November 19, 2017, in response to a grand jury subpoena.

**Notice of Inextricably Intertwined or 404(b) Evidence—Page 1**

The indictment specifically lists Origen Laboratories and Progen Lab Systems, LLC ("collectively referred to as Progen Lab"). Testimony at trial will show that Progen Lab had previously been known as Xpress Laboratories and Rxpress Laboratories. All three entities were owned and operated by the same individuals.

Additionally, the government intends to introduce evidence that the defendant and his coconspirators worked with a variety of other labs during the charged period to submit urine and saliva samples for toxicology and DNA testing. These laboratories include Sirius Laboratories, Liberty Labs, and Cordent Laboratories.

## ARGUMENT

I.  **Submission of urine and saliva samples to other laboratories is inextricably intertwined with the charges alleged in the indictment.**

Evidence about the submission of urine and salvia samples to laboratories other than Progen Lab is intrinsic to the crimes charged in this case. Evidence of other acts is intrinsic "when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or other acts were necessary preliminaries to the crime charged." *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990). It is axiomatic that "intrinsic evidence is admissible to 'complete the story of the crime by proving the immediate context of events in time and place.'" *United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010) (quoting *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996)); *see also United States v. Torres*, 685 F.2d 921, 924 (5th Cir. 1982) (evidence is intrinsic when testimony is "necessary to provide coherence to the government's case"). Intrinsic evidence does not implicate Rule 404(b),

and "consideration of its admissibility pursuant to [that rule] is unnecessary." *United States v. Garcia*, 27 F.3d 1009, 1014 (5th Cir. 1994).

The evidence at trial will show that the defendant and his coconspirators submitted urine and saliva samples to multiple labs during the charged period to achieve the purpose of the conspiracy: "to unlawfully enrich themselves by submitting and causing the submission of false and fraudulent claims to TRICARE for health care benefits." (DKT. 1).  The submission of these samples—and the defendant's ordering of the testing—was all part of the same conspiracy as charged in the indictment.

In fact, in a July 2015 email between Rao and his coconspirator Erik Bugen, Bugen explains why ADAR Group used multiple labs to test the urine and saliva samples.  Bugen explained that Sirius Laboratories and Liberty Labs/Cordent allowed blanket orders for toxicology DNA testing while Rxpress required the provider (Rao) to "sign every federal sample by hand."  This requirement was to ensure reimbursement for the testing by the government, i.e., TRICARE.

Accordingly, the evidence that toxicology and genetic testing was completed through multiple labs is inextricably intertwined with the charges alleged in the indictment.  *See, e.g.*, *United States v. Barnes*, 803 F.3d 209, 220 (5th Cir. 2016) ("An act that is alleged to have been done in furtherance of the alleged conspiracy . . . is not an 'other' act within the meaning of Rule 404(b); rather, it is part of the very act charged." (citations omitted)); *U.S. v. Ceballos*, 789 F.3d 607, 620 (5th Cir. 2015) (evidence pertaining to a defendant's uncharged crimes, wrongs, or acts is considered intrinsic to the charged offense and is generally admissible if "it and evidence of the crime charged

are inextricably intertwined, or both acts are part of a single criminal episode, or [the uncharged act] was a necessary preliminary to the crime charged." (citing *United States v. Sumlin*, 489 F.3d 683, 689 (5th Cir. 2007))).

## II. Alternatively, the evidence concerning these additional labs is admissible under Rule 404(b).

However, even if the Court determines that the anticipated evidence of the additional labs is extrinsic evidence, the evidence should be admitted at trial to prove the defendants' intent, knowledge, and that the submission of claims to TRICARE was not a mistake or accident.

Federal Rule of Evidence 404(b) "generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect on the [defendant's] character." *Huddleston v. United States*, 485 U.S. 681, 685 (1988). However, evidence of other "crimes, wrongs, or other acts" can be admitted, not to prove character, but to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). The admissibility of evidence under Rule 404(b) typically is governed by the two-step *Beechum* test, whether: "'(1) the extrinsic offense evidence is relevant to an issue other than the defendant's character' and (2) the evidence 'possesses probative value that is not substantially outweighed by its undue prejudice and meets the other requirements of [Federal Rule of Evidence] 403.'" *United States v. Juarez*, 866 F.3d 622, 627 (5th Cir. 2017) (alterations omitted) (quoting *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc)). Here, both *Beechum* steps are satisfied.

The June 25, 2015 email referenced above is evidence of the defendant's intent, knowledge, and absence of accident or mistake. The June 25, 2015 email outlines the different procedures for each lab depending on whether the laboratory accepted private or federal insurance. Accordingly, it supports a finding that Rao knew he was ordering urine and toxicology testing that would later be billed to federal insurance programs such as TRICARE, that he intended to order these tests, and that his conduct was not an accident or mistake. Therefore, this evidence is admissible under Rule 404(b).

### III. Whether the evidence of submission to multiple laboratories is intrinsic evidence or 404(b) evidence, it is admissible under Rule 403.

For all the reasons detailed above, the evidence regarding the submission of urine and saliva samples to multiple laboratories is highly probative because it tends to show the defendant's intent to defraud. Fed R. Evid. 403; *United States v. Williams*, 708 F. App'x 826, 830 (5th Cir. Sept. 27, 2017) (finding intrinsic evidence is admissible to show proof of intent or motive, and prosecution may "offer all of the surrounding circumstances that were relevant" "to complete the story of the crime" (quoting *Coleman*, 78 F.3d at 156; *United States v. Dula*, 989 F.2d 772, 777 (5th Cir. 1993)). Any risk of unfair prejudice is mitigated by the defendants' ability to cross-examine his coconspirators as to these issues.

### CONCLUSION

The United States respectfully submits that evidence regarding the submission of urine and saliva samples to multiple laboratories during the charged conspiracy is inextricably intertwined with the conspiracy alleged in the indictment. Accordingly, this

evidence is admissible at trial. Alternatively, the evidence is admissible under Federal Rule of Evidence 404(b) as evidence of intent, knowledge, and absence of mistake or accident.

Respectfully submitted,

CHAD E. MEACHAM
ACTING UNITED STATES ATTORNEY

JOSEPH BEEMSTERBOER
ACTING CHIEF, FRAUD SECTION

*/s/ Adrienne E. Frazior*
Adrienne E. Frazior, Assistant Chief
Fraud Section, Criminal Division
Department of Justice
1100 Commerce St., Suite 300
Dallas, Texas 75242
Telephone: (202) 316-0646
Adrienne.Frazior2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2021, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *Adrienne E. Frazior*
Adrienne E. Frazior
Assistant Chief
Fraud Section, Criminal Division