IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| v. § | Criminal No. **3:19-CR-507-L** |
| § | |
| **SEKHAR RAO (1)** § | |

## MEMORANDUM OPINION AND ORDER

The court issues this opinion to address the remaining objections and arguments raised by Defendant and the Government that were unresolved in the first sentencing hearing.

### I.   Factual and Procedural Background

Defendant Sekhar Rao ("Dr. Rao" or "Defendant") was one of three physicians who were recruited by Erik Bugen to further a medical testing scheme. The physicians signed unnecessary toxicology and pharmacogenomics orders for recruited patients who received Walmart giftcards for providing urine and saliva samples. The medical testing orders were processed through Cockerell Dermatopathology ("Cockerell"), and billed to TRICARE as many of the recruited patients were military members. A physician's signature was necessary for the testing to be billed and reimbursed by TRICARE. The TRICARE patients who provided the samples did not see those doctors, did not receive test results, and did not know the purpose of their samples.

Mr. Bugen recruited Defendant to act as the medical director for ADAR, the entity through which Mr. Bugen and others operated this scheme, and Dr. Rao signed orders for unnecessary toxicology and DNA cancer screen testing that was then billed to TRICARE. Initially, Mr. Bugen met with Dr. Rao in a private home to have him sign the testing forms; however, Mr. Bugen subsequently obtained a signature stamp for Dr. Rao, with his permission, which eliminated the

need to meet in person, although monthly payments continued to be made to Dr. Rao for the use of his signature.

As trial testimony presented, Dr. Rao was kept in the dark on how the greater conspiracy operated. Between June 2015 and January 2016, Dr. Rao signed—or his signature stamp was used to sign—authorizations for unnecessary medical testing for approximately 398 TRICARE beneficiaries. In total, TRICARE was billed $13,040,815.26 for unnecessary testing signed by Dr. Rao as a part of the scheme, which resulted in TRICARE paying Cockerell $2,533,910.50.

On August 29, 2022, Defendant was found guilty by a jury of Counts Two and Three of the Indictment that charged him and Codefendant Vinay Parameswara[1] with Health Care Fraud, in violation of 18 U.S.C. § 1347 and 18 U.S.C. § 2. Counts 2 and 3 charged Defendant with fraudulent TRICARE claims submitted and associated with beneficiary J.J. on October 13, 2015, and October 14, 2015, respectively. The jury also returned a verdict of not guilty for Count One, which charged Defendant with Conspiracy to Commit Healthcare Fraud.

Pursuant to the court's sentencing order, the United States Probation Office ("Probation") filed a Presentencing Report ("PSR") (Doc. 186) on January 20, 2023. In the numerous motions, memorandums, and addendums that followed, both Defendant and the Government objected to substantial portions of the PSR and its Addendum (Doc. 191).

On March 25, 2023, the court conducted the first sentencing hearing in this case. After consideration of the parties' voluminous filings and arguments, the court granted Defendant's Motion for Leave to File Exhibit out of Time (Doc. 197), and conditionally admitted Defendant's Exhibit 1, with attachments 1A and 1B. The court overruled as moot the Government's objections to ¶¶ 24 and 27 of the PSR, which set forth that Dr. Rao permitted Mr. Bugen to obtain the signature

---

[1] Codefendant Parameswara pleaded guilty and will be sentenced on July 24, 2023.

**Memorandum Opinion and Order – 2**

stamp and that Dr. Rao went to Mr. Bugen's home, as well as an ADAR facility, to sign the forms, overruled its objection to ¶ 41 of the PSR, and applied the minor participant reduction. Because the issue was a close call and, relying on the rule of lenity, the court determined that the reduction was appropriate. The court overruled as moot Defendant's objections to ¶¶ 54 and 83, related to his financial forms and alleged homeownership, having no impact on the Guideline calculation, and overruled as moot his factual clarifications to his employment and financial history set forth in ¶¶ 66, 67, 76, 78, and 80 because the PSR Addendum amended those factual assertions. The court carried Defendant's objections to ¶¶ 104-106 of the PSR as related to the PSR's alleged failure to state the possible grounds for downward variance because: (1) the court has not yet ruled on Defendant's Sentencing Memorandum and Request for Downward Variance (Doc. 195); and (2) Probation is not required to include possible areas for variance in the PSR.

After hearing extensive arguments from the parties, the court granted Defendant's request for a continuance of the hearing to allow him time to subpoena the Government for evidence to support his request for an offset to his restitution amount. The court continued Defendant's sentencing to June 26, 2023, to address the issue of restitution and to calculate the Guidelines based on its prior rulings before pronouncing Defendant's sentence. Defendant has since filed a Supplemental Sentencing Memorandum (Doc. 207), after first seeking and receiving the court's leave to do so. The court will address the remaining objections in turn.

## II.   Analysis

### A.  Consideration of Acquitted Conduct

Defendant objects to ¶¶ 20, 21, 28, 36, 37, 102, and the three-level enhancement in ¶ 38 of the PSR because he argues that it holds him accountable for acquitted conduct. Specifically, he objects to the inclusion of all amounts billed to TRICARE under his name when calculating the

total loss amount attributable to him. He argues that, according to the jury, he is responsible for the $12,471.39 in actual loss that is tied to Counts Two and Three of the Indictment. He contends that the total loss amount should not include the actions of the whole fraud scheme because he was acquitted of the conspiracy charge, and points to Mr. Bugen's testimony that showed that Defendant was purposefully kept in the dark about the criminal conduct of the enterprise. He contends that this would result in an "improper end-run around [his] Constitutional rights to due process under the Fifth Amendment and to a trial by an impartial jury under the Sixth Amendment." Doc. 190 at 5. Defendant concedes, however, that current law permits a court to consider acquitted conduct at sentencing when the preponderance of the evidence shows a defendant's culpability. *United States v. Andradi*, 309 F. App'x 891, 893 (5th Cir. 2009) (quoting *United States v. Watts*, 519 U.S. 148, 157 (1997)).

In response, the Government asserts that Fifth Circuit caselaw and the Guidelines require consideration of all relevant conduct, regardless of conviction or acquittal, when the conduct has been proved by a preponderance of the evidence. The Government points to Defendant's agreement with Mr. Bugen to submit the medically unnecessary tests for compensation, the payment per test, and his permission to use a signature stamp. Overall, Defendant was responsible for causing the submission of approximately $13,040,815.26 in medically unnecessary claims to TRICARE, which is appropriately included in the PSR's loss calculation. Further, the Government argues that *United States v. Sumerour*, No. 3:18-CR-582-S-1, 2020 2020 WL 5983202 (N.D. Tex. Oct. 8, 2020), cited by Defendant, is not similar, because that defendant was not a doctor and conducted the billing and practice management at the directions of her boss, a medical doctor. Here, the Government has shown that Dr. Rao is a doctor and provided the necessary signature for the fraudulent billing.

**Memorandum Opinion and Order – 4**

Before the court can state the applicable law and apply it to the parties' legal arguments, it must first determine whether the parties accurately label the facts on which they base their legal arguments. The court determines that they have not.

Defendant argues that the total amount billed under Dr. Rao's name is improperly included as acquitted conduct because that conduct was part of the conspiracy. Defendant does not specify how the total amount billed with Dr. Rao's signature is part of a conspiracy—that is, the actions taken in agreement with others to defraud—and instead argues that Defendant can only be held responsible for the specific paid amounts in Counts Two and Three. Defendant mislabels the total amount of unnecessary billing associated with Dr. Rao as acquitted conduct.

Importantly, Defendant does not argue that the total amount of medical tests billed to TRICARE with his signature totals roughly $13 million. That amount was billed to TRICARE based on the authorizations that Defendant signed—or his signature stamp was used to sign—and processed through Cockerell and the other players in the scheme. The signed authorizations were the specific act for which the jury found Defendant guilty, which required no more participation in a conspiracy than the conduct in Counts Two and Three. Consideration of the total amount billed with Dr. Rao's signature holds him accountable only for his actions, not that of the other alleged coconspirators. For example, Mr. Bugen was ordered to pay almost $5 million in restitution as part of his involvement in this scheme[2]; the PSR does not hold Dr. Rao jointly and severally liable for that amount, as he would be if he were convicted of conspiracy. The $13 million of fraudulent billing under Defendant's NPI number was the result of his own actions, through his willful conduct of signing hundreds of forms and permitting the creation and use of his signature stamp to be used on additional forms.

---

[2] *See United States v. Bugen*, Case No. 1:17-CR-403 (1), sentencing him to 36 months incarceration, 3 years of supervised release, $100 special assessment, and $4,776,768.37 in restitution. Doc. 25.

**Memorandum Opinion and Order – 5**

This differs from the facts in *United States v. Sumerour*, No. 3:18-CR-582-S-1, 2020 WL 5983202 (N.D. Tex. Oct. 8, 2020). That case similarly considered sentencing a defendant who was found guilty by a jury of healthcare fraud but acquitted of conspiracy to commit healthcare fraud. United States District Judge Karen Scholer determined first that the Government had the conspiracy charge by a preponderance of the evidence, and then by an independent analysis, Judge Scholer found that consideration of acquitted conduct would violate the defendant's constitutional rights because it would give the defendant the same total loss amount as if she had been found guilty of conspiracy. That is not true here because the $13 million is only amounts attributable for Dr. Rao's own actions, and he is not being held liable for all of the fraudulent billing conducted by Mr. Bugen, Cockerell, or the other physicians who participated in the conspiracy. For these reasons, the court determines that the total amount billed by Dr. Rao is not properly labeled as acquitted conduct.

It is, however, properly considered as relevant conduct. When determining a defendant's applicable sentencing range, U.S.S.G. §1B1.3(a)(2) requires the court to consider all relevant conduct, including "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of the conviction." *United States v. Watts*, 519 U.S. 148, 153 (1997) (quoting U.S.S.G §1B1.3(a)(2)). Section 1B1.3 provides that conduct that is part of the same course of conduct if the acts are sufficiently connected as being part of an ongoing series of offenses. "Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." §1B1.3, cmt. 5(b)(ii).

In similar healthcare fraud cases, the Fifth Circuit finds that the total loss amount from fraudulent activities that involve physicians signing forms authorizing fraudulent billing are properly considered when calculating the loss amount to determine a defendant's base offense level. *United States v. Ramirez*, 979 F.3d 276, 282 (5th Cir. 2020); *see also United States v. Ainabe*, 938 F.3d 685, 689 (5th Cir. 2019).

Here, Defendant's actions fall squarely into the definition of relevant conduct under §1B1.3, cmt. 5(b)(ii) and the application of controlling caselaw. The fraudulent forms that Dr. Rao's signed were nearly identical to the specific tests ordered, the billing entity, and the diagnosis codes used to justify the testing. He signed the forms one after the other, often signing as many as a hundred in one sitting. Finally, Dr. Rao's involvement in the fraudulent billing occurred in a short time frame—less than seven months. For these reasons, the court considers that the total amount that Dr. Rao authorized to be billed to TRICARE can be considered as relevant conduct because it was part of the same course and common plan.

As to Defendant's argument that it was acquitted conduct, the court again disagrees. The common scheme or plan that Defendant is accountable for was his own plan to defraud TRICARE. Dr. Rao continued to sign authorizations for unnecessary medical testing and to receive compensation for those tests. The common plan was not common among the other actors in the overall scheme but Defendant's repeated fraudulent acts. Accordingly, the court finds that the total amount billed under Dr. Rao's name is appropriately considered as relevant conduct, not acquitted conduct. For these reasons, the court **overrules** Defendant's objection to the PSR's inclusion of "so-called" acquitted conduct because it is properly considered as relevant conduct done by Dr. Rao in the same course of conduct as Counts Two and Three.

### B. Intended Loss versus Actual Loss Amounts

*i.     The Parties' Arguments*

Defendant objects to ¶¶ 36, 37, and the three-level enhancement in ¶ 38 for relying on the "intended loss" commentary of the Guidelines. Dr. Rao objects to Probation's deference to Application Note 3 of U.S.S.G. §2B1.1 insofar as an intended loss governs the enhancement applicable under §2B1.1(b)(1). He asserts that the recent decision in *Kisor v. Wilkie*, — U.S. —, 139 S. Ct. 2400, 2412 (2019), "thus requires this court to withhold deference to the commentary's expanded definition that sweeps in intended losses." Doc. 190 at 18. *Wilkie* holds that a district court need not defer to agency commentary unless the test is truly ambiguous. If so, then the court must consider whether the agency rule is reasonable. If the text is ambiguous and the commentary is reasonable, then the court must still "make an independent inquiry into whether the character and context of the agency interpretation entitles it to controlling weight." *Id*. at 2414-16.

Defendant asks the court to follow a recent Third Circuit opinion rejecting the inclusion of "intended loss" in the definition of "loss." "[I]n the context of a sentence enhancement for basic economic offenses, the ordinary meaning of the word 'loss' is the loss the victim actually suffered." Doc. 190 at 15 (citing *United States v. Banks*, 55 F.4th 246 (3d Cir. 2022)). He asks the court to define "loss" as suffering harm or deprivation, limiting his Guidelines enhancement exposure to only the amounts that the victim actually incurred as a result of his criminal conduct. *Id*. at 16-17.

The Government argues that the court should consider the intended loss amount based on the Fifth Circuit precedent that relies on the Guidelines' definition of loss. The Guidelines commentary has included an application note clarifying that "loss" means the greater of actual or intended loss. U.S.S.G. § 2B1.1 cmt. n.3(A)(ii) ("[I]ntended loss 'may include intended pecuniary

Memorandum Opinion and Order – 8

harm that would have been impossible or unlikely to occur."); *see also United States v. Isiwele*, 635 F.3d 196, 202 (5th Cir. 2011). Further, it argues that Section 1B1.3 directs courts to determine the base offense level for an offense "on the basis of . . . all harm that resulted from the acts and omissions" of the defendant as part of the offense, and "all harm that was the object of such acts and omissions." U.S.S.G. § 1B1.3(a)(3).

    ii.  *Applicable Law and Analysis*

Under *Wilkie*, deference to agency definitions and commentary is "rooted in a presumption about congressional intent—a presumption that Congress would generally want the agency to play the primary role in resolving regulatory ambiguities." *Wilkie*, 139 S. Ct. at 2412. Therefore, the court must first find that the regulation is ambiguous before looking to the commentary for guidance. *See id*. at 2415 ("[T]he possibility of deference can arise only if a regulation is genuinely ambiguous. And when we use that term, we mean it—genuinely ambiguous, even after a court has resorted to all the standard tools of interpretation.")

Here, the court must weigh carefully whether it is in the position to make such a finding of ambiguity and upend the existing controlling precedent. As the parties are aware from Defendant's multiple motions requesting a continuance on these grounds, the Fifth Circuit has not yet changed its deference to the Guideline definitions and continues to apply existing controlling precedent.

> We acknowledge the circuit split that this issue has presented, and particularly note the Third Circuit's en banc decision in *United States v. Nasir*, finding that "inchoate crimes are not included in the definition of 'controlled substance offenses' given in section 4B1.2(b) of the sentencing guidelines." 982 F.3d 144, 160 (3d Cir. 2020). *But see United States v. Lange*, 862 F.3d 1290, 1295 (11th Cir. 2017) (noting that Application Note 1 to U.S.S.G. § 4B1.2 directs courts not to "construe 'prohibit' too narrowly" such that "'[c]ontrolled substance offense' cannot mean only offenses that forbid conduct outright, but must also include related inchoate offenses that aim toward that conduct").
>
> The Third Circuit changed its position on § 4B1.2 after the recent Supreme Court decision, *Kisor v. Wilkie*, in which the Court "cut back on what had been

**Memorandum Opinion and Order – 9**

> understood to be **uncritical and broad deference** to agency interpretations of regulations and explained that *Auer*, or *Seminole Rock*, deference should only be applied when a regulation is genuinely ambiguous." *Nasir*, 982 F.3d at 158 (citing *Kisor v. Wilkie*, — U.S. —, 139 S. Ct. 2400, 2414–15, 204 L.Ed.2d 841 (2019)). The court found that "in light of *Kisor*'s limitations on deference to administrative agencies" it is no longer proper to give the commentary "independent legal force" and that "separation-of-powers concerns advise against any interpretation of the commentary that expands the substantive law set forth in the guidelines themselves." *Id*. at 159–60. If Goodin did not have the other two qualifying offenses and we were not constrained by Lightbourn, our panel would be inclined to agree with the Third Circuit.

*United States v. Goodin*, 835 F. App'x 771, 782 n.1 (5th Cir. 2021). Here, the Fifth Circuit recognized the circuit split but looked to both the specific defendant and his other offenses, as well as the *controlling precedent* to apply the Guidelines as written.

In another district court case that the court finds persuasive, the Texas court refused to adopt the defendant's argument that *Wilkie* recognizes a new right mandating "that deference should not be given under the Sentencing Guidelines to 4B1.1 upon which this enhancement relies." *Guerrero v. United States*, No. 1:08-CR-907-3, 2020 WL 8093651, at *3 (S.D. Tex. Dec. 1, 2020), *R&R adopted*, No. 1:20-CV-00002, 2021 WL 124329 (S.D. Tex. Jan. 13, 2021) (cleaned up). The court determined that the "[defendant] misconstrues the Supreme Court's holding; critically, *Wilkie* does not establish or otherwise address any right regarding the application of the Sentencing Guidelines." *Id*.

In keeping with this longstanding Guidelines deference to the definition of "loss," the Fifth Circuit has interpreted "loss" in the context of Section 2B1.1 to include intended loss. *See Isiwele*, 635 F.3d at 202-03; *see also United States v. Iglehart*, 687 F. App'x 333, 339 (5th Cir. 2017) (applying a 20-level enhancement to a defendant for an intended loss amount based upon the total billed amount for fraudulent healthcare). Accordingly, this court must follow existing, controlling law as it is not its role to divert from precedent to anticipate what the Fifth Circuit may decide. For

**Memorandum Opinion and Order – 10**

the reasons stated here, the court will apply the Guidelines definition of "loss" to include all harm that resulted and all harm that was the object of such acts and omissions when considering relevant conduct. U.S.S.G. §1B1.3(a)(3).

Having determined that the Guidelines definition of "loss" is properly applied here, the court finds that the intended loss is the amount that Dr. Rao billed in fraudulent medical testing, not the total amount that the entire scheme billed to TRICARE, as Dr. Rao was acquitted of conspiracy, and there is no evidence that he understood the breadth of the criminal enterprise. *See United States v. Usman*, 460 F. App'x 414, 417 (5th Cir. 2012) (holding the physician defendant accountable only for the amount billed on Medicare fraud claims, as there was no evidence that he understood billing and reimbursement at significantly lower amounts). As the court addressed at length above, Dr. Rao is responsible for the fraud he committed by signing unnecessary medical testing billed to TRICARE. Both the testimony presented at trial and evidence referenced in the PSR show that Dr. Rao signed, or his signature stamp was used to sign, authorizations for unnecessary testing, and that TRICARE was billed $13,040,815.26 as a result. Therefore, the 20-level enhancement, pursuant to U.S.S.G. §2B1.1(b)(1)(K) for Count Group One, including Counts Two and Three, is appropriate as applied. Accordingly, the court **overrules** Defendant's objections.

### C. TRICARE Beneficiaries as Victims

Defendant objects to ¶¶ 29 and 37 of the PSR, which assert that because the victims in this action are the TRICARE beneficiaries, a ten-level enhancement applies due to the number of victims. Defendant argues that this expands the Guidelines definition of "victim," and argues that he should be held responsible at sentencing for Counts Two and Three, which involved only one individual. Further, Defendant objects to the PSR's reliance on the statement of Special Agent

Dennick, who the Government fought to keep from testifying at trial and therefore being subject to cross-examination. Defendant also objects to the substance of Dennick's remarks related to TRICARE beneficiaries as "victims," asserting that the service members also benefited from the fraud by receiving Walmart gift cards as kickbacks. Defendant alleges that the beneficiaries' actions of selling their own bodily fluids would have a greater negative impact than any implication from receiving medical testing for alcohol dependence.

Precedential law is clear here. Each TRICARE beneficiary is a "victim" as defined by the U.S.S.G. §2B1.1. *United States v. Barson*, 845 F.3d 159 (5th Cir. 2016). The Fifth Circuit has consistently held that the definition of "victims" in Guideline 2B1.1, include "any individual whose means of identification was used unlawfully or without authority." *United States v. Ramirez*, 979 F.3d 276, 282 (5th Cir. 2020) (citing *Barson*, 845 F.3d 159, 167 (5th Cir. 2016)). "Our precedent therefore dictates that each [federal health care benefit program] beneficiary whose information was used in a fraudulent claim is a 'victim' within the meaning of Guidelines § 2B1.1(b)(2)(A)(i)." *Ramirez*, 979 F.3d at 282.

Dr. Rao provided his signature for approximately 398 TRICARE beneficiaries. That the service members received a kickback for their participation does not detract from the fact that Dr. Rao used their "means of identification," the standard the court applies. There is no doubt that the service members were aware that they were benefiting from a less-than pristine operation, but Dr. Rao benefited even more from the fraud. Therefore, the service members are victims as defined by the Guidelines. Defendant's assertion to the contrary has no basis in controlling law. For this reason, the court **overrules** the objection as related to the victim enhancement and SA Dennick's statements in the PSR, and will apply the ten-level enhancement at sentencing.

**Memorandum Opinion and Order – 12**

### D. Repeated Arguments for Acquittal

Repeating his arguments presented in his Motion for Acquittal, which the court denied, Defendant objects to ¶¶ 25 and 26, which are the inclusion of Dr. Rao's conduct for the charges in Counts Two and Three, arguing that the Government did not offer those specific test requisition forms into evidence, and therefore did not prove its case.

Because the court has already evaluated this argument in its order denying Defendant's Motion for Acquittal, it need not retread the same ground here. The Government presented sufficient evidence for a reasonable jury to find the Defendant guilty, and the jury did so, returning a guilty verdict on Counts Two and Three. For the same reasons expressed in that order, the court **overrules** Defendant's objections.

### E. Defendant's Supplemental Sentencing Memorandum

In Defendant's Supplemental Sentencing Memorandum (Doc. 207), he requests that the court to apply the approved amendment to the Sentencing Guideline that would reduce his offense level by two because he is a zero-point offender. Doc. 207 at 1. In essence, he asks the court to apply the changes to the Guidelines that will take effect in November 2023.

The court denies Defendant's request because it must consider and apply the Guidelines as they exist at the time of sentencing, not what they will potentially be in four months. For this reason, the court **denies** the request to apply the future Guidelines amendment related to zero-period offenders at Dr. Rao's sentencing.

### III.  Conclusion

For the reasons herein stated, the court **overrules** Defendant's objections to ¶¶ 20, 21, 28, 36, 37, 102, and the three-level enhancement in ¶ 38 of PSR because it is properly considered as relevant conduct of Defendant in the same course of conduct as Counts Two and Three; the court

**overrules** Defendant's objections to ¶¶ 36 and 37, and the application of the 20-level enhancement as to the calculation of total loss amount as defined in U.S.S.G. §2B1.1(b)(1)(K) for Count Group One; the court **overrules** Defendant's objections to ¶¶ 29 and 37 and applies a ten-level enhancement due to the number of victims who are TRICARE beneficiaries; and the court **overrules** Defendant's objections to ¶¶ 25 and 26, which are the repeated arguments for acquittal of Counts Two and Three. The court also **denies** Defendant's request to apply the future Guidelines amendment related to zero-period offenders, as argued in his Supplemental Sentencing Memorandum (Doc. 207). Finally, the court **grants** Defendant's Motion for Leave to File Exhibit out of Time (Doc. 197).

    **It is so ordered** this 26th day of June, 2023.

Sam A. Lindsay<br>
United States District Judge